UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CV-60888-MARTINEZ/VALLE

ANIMACCORD LTD.,

    Plaintiff,

v.

THE INDIVIDUALS, PARTNERSHIPS,
AND UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

    Defendants.
_____/

## REPORT AND RECOMMENDATION TO DISTRICT JUDGE

THIS MATTER is before the Court upon Plaintiff's Motion for Entry of Final Default Judgment Against Defendants (ECF No. 54) (the "Motion"). United States District Judge Jose E. Martinez referred the Motion to the undersigned for a Report and Recommendation. (ECF No. 57). Upon review of the Motion, supporting declarations, and the record in this matter, the undersigned recommends that Plaintiff's Motion be **GRANTED**.

### I.     BACKGROUND

**A. Plaintiff's Claims**

Plaintiff Animaccord Ltd. ("Plaintiff" or "Animaccord") seeks entry of a default final judgment against Defendants, the Individuals, Partnerships, and Unincorporated Associations identified on Schedule "A" of the Motion. *See generally* (ECF No. 54). Plaintiff is the owner of the Masha and The Bear Marks,[1] which are valid and registered on the Principal Register of the United States Patent and Trademark Office. *See generally* (ECF No. 1 ¶ 25). The Masha and The

---

[1] Capitalized terms not defined herein are defined in the Complaint or Motion.

Bear Marks and Copyrighted Works[2] are used in connection with the design, marketing, and distribution of genuine high-quality Masha and The Bear branded goods as identified in the Complaint. (ECF No. 1 ¶ 26); *see also* Golovlova Decl. ¶¶ 6-7.

Plaintiff's investigator accessed the Internet based e-commerce stores operating under the seller identities listed on Schedule "A" ("Seller IDs") and analyzed the Masha and The Bear branded items. *See* Golovlova Decl. ¶¶ 15, 17. Plaintiff's investigator determined the products were non-genuine, unauthorized versions of Plaintiff's products. *Id.* ¶ 18. Based on its investigation, Plaintiff alleges Defendants are promoting and advertising, distributing, selling, and/or offering for sale counterfeit and infringing goods ("Counterfeit Goods") in interstate commerce using exact copies and confusingly similar copies of the Masha and The Bear Marks and Copyrighted Works through at least the Internet based e-commerce stores operating under the Seller IDs. (ECF No. 1 ¶ 38); *see also* Golovlova Decl. ¶¶ 15-18. Defendants do not have, nor have they ever had, the right or authority to use the Masha and The Bear Marks and Copyrighted Works for any purpose. Golovlova Decl. ¶ 15.

In the Motion, Plaintiff seeks, among other things, to: (i) enjoin Defendants' willful counterfeiting pursuant to 15 U.S.C. § 1117(c); (ii) permanently remove the listings and associated images of the goods bearing counterfeits and/or infringements of Plaintiff's trademarks and copyrights being used by Defendants; and (iii) cancel, or at Plaintiff's election, transfer the domain names at issue to ensure the associated websites may no longer be used as a means for selling goods bearing counterfeits of Plaintiff's trademarks and copyrights, and infringing upon Plaintiff's rights. *See* (ECF No. 54 at 1-2); *see also* (ECF No. 1 at 21-24) (Prayer for Relief).

---

[2] "Copyrighted Works" are identified in Schedules C and D of the Declaration of Inna Golovlova in Support of Plaintiff's Ex Parte Motion for Entry of TRO (ECF No. 5-2) ("Golovlova Decl.").

### B. Procedural Background

On May 12, 2023, Plaintiff filed its Complaint against Defendants. *See generally* (ECF No. 1). On May 23, 2023, Plaintiff filed Ex Parte Motions for: (i) Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Asset; and (ii) Order Authorizing Alternate Service of Process. (ECF Nos. 5, 6). On October 9, 2023, the Court granted Plaintiff's *Ex Parte* Application for Entry of Temporary Restraining Order and authorized Plaintiff to serve the summons, Complaint, and all subsequent filings in this matter upon Defendants via e-mail and posting copies of the same on Plaintiff's designated service notice website. (ECF No. 9). On November 10, 2023, Plaintiff served each Defendant with a Summons and a copy of the Complaint via electronic mail and website posting. (ECF No. 28) (Proof of Service).

To date, Defendants have failed to answer or otherwise respond to the Complaint, and the time for Defendants to respond to the Complaint has expired. (ECF No. 54-2 ¶¶ 5-6) (Declaration of Richard Guerra in Support of Plaintiff's Motion for Entry of Final Default Judgment) ("Guerra Decl."). To Plaintiff's knowledge, Defendants are not infants or incompetent persons, and the Servicemembers Civil Relief Act does not apply. *Id.* at ¶ 7. On February 27, 2024, Plaintiff filed a Motion for a Clerk's Entry of Default, which the Clerk entered on January 28, 2024. (ECF Nos. 48, 49). The instant Motion followed.

## II.   LEGAL STANDARD

A party may apply to the Court for a default judgment when the defendant fails to timely respond to a pleading. Fed. R. Civ. P. 55(b)(2). "A defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Eagle Hosp. Physicians, LLC v. SRG Consulting,*

*Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) (quotations omitted) (quoting *Nishimatsu. Const. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1205 (5th Cir. 1975)).[3] However, conclusions of law are to be determined by the court. *Mierzwicki v. CAB Asset Mngmt. LLC*, No. 14-CV-61998, 2014 WL 12488533, at *1 (S.D. Fla. Dec. 30, 2014) (citation omitted). Therefore, a court may only enter a default judgment if there is a "sufficient basis to state a claim." *Id.*

Once a plaintiff has established a sufficient basis for liability, the Court must conduct an inquiry to determine the appropriate damages. *PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213, 1217 (S.D. Fla. 2004) (citation omitted). Although an evidentiary hearing is generally required, the Court need not conduct such a hearing "when . . . additional evidence would be truly unnecessary to a fully informed determination of damages." *Safari Programs, Inc. v. CollectA Int'l Ltd.*, 686 F. App'x 737, 746 (11th Cir. 2017). Therefore, where the record adequately supports the award of damages, an evidentiary hearing is not required. *See SEC v. Smyth,* 420 F. 3d 1225, 1232 n.13 (11th Cir. 2005); *see also PetMed Express*, 336 F. Supp. 2d at 1217 (finding evidentiary hearing unnecessary because plaintiff was seeking statutory damages under the Lanham Act); *Luxottica Group S.p.A. v. Casa Los Martinez Corp.*, No. 14-CV-22859, 2014 WL 4948632, at *2 (S.D. Fla. Oct. 2, 2014) (same).

### III.   DISCUSSION

#### A.   Plaintiff Has Sufficiently Plead its Claims

The Complaint asserts five claims against Defendants: (i) trademark counterfeiting and infringement under § 32 of the Lanham Act, in violation of 15 U.S.C. § 1114 (Count 1); (ii) false designation of origin under § 43(a) of the Lanham Act, in violation of 15 U.S.C. § 1125(a) (Count 2); (iii) unfair competition under Florida common law (Count 3); (iv) trademark infringement

---

[3] Pursuant to *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), opinions of the Fifth Circuit issued prior to October 1, 1981, are binding precedent in the Eleventh Circuit.

4

under Florida common law (Count 4); and (v) copyright infringement, in violation of 17 U.S.C. §§ 106(1), (2), (3), (5) & 501. (Count 5).  *See* (ECF No. 1 ¶¶ 52-88).

    *1.    Trademark Counterfeiting and Infringement Under the Lanham Act (Count 1)*

Under § 32(a) of the Lanham Act, 15 U.S.C. § 1114(1)(a), liability for trademark infringement occurs when a person "use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark" that "is likely to cause confusion, or to cause mistake, or to deceive." *PetMed Express*, 336 F. Supp. 2d at 1217-18 (citations omitted). Thus, to prevail on a trademark infringement claim, a plaintiff must demonstrate that: (i) its mark has priority; (ii) defendant used its mark in commerce; and (iii) defendant's mark is likely to cause consumer confusion. *Id*. Additionally, the analysis of liability for Florida common law trademark infringement (as in Count 4) is the same as under the Lanham Act. *Id*. (citing *Gift of Learning Found., Inc. v. TGC, Inc.*, 329 F.3d 792, 802 (11th Cir. 2003)).

As to Count 1, Plaintiff alleges that:

> 54. Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing goods, using counterfeits and/or infringements of one or more of the Masha and The Bear Marks. Defendants are continuously infringing and inducing others to infringe the Masha and The Bear Marks by using one or more of them to advertise, promote, offer to sell, and/or sell at least counterfeit and infringing goods.
>
> 55. Defendants' concurrent counterfeiting and infringing activities are likely to cause and actually are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods.
>
> 56. Defendants' unlawful actions have individually and jointly caused and are continuing to cause unquantifiable damage to Plaintiff and are unjustly enriching Defendants with profits at Plaintiff's expense.
>
> * * *
>
> 58. Plaintiff has suffered and will continue to suffer irreparable injury and damages due to Defendants' above described activities if Defendants are not preliminarily

and permanently enjoined. Additionally, Defendants will continue to wrongfully profit from their illegal activities.

(ECF No. 1 ¶¶ 54-56, 58); *see also Id.* ¶¶ 62-66 (alleging false designation of origin in Count 2); *Id.* ¶¶ 73-76 (alleging common law trademark infringement in Count 4).

Based on these allegations, which are admitted upon Defendants' default, Plaintiff has satisfied the elements to establish a claim for federal and common law trademark infringement as alleged in Counts 1 and 4.

2.  *False Designation of Origin Pursuant to § 43(a) of the Lanham Act (Count 2)*

Section 43(a) of the Lanham Act makes it unlawful for "[a]ny person . . . in commercial advertising or promotion, [to] misrepresent[] the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B). To state a claim under § 43 of the Lanham Act, a plaintiff must show that: (i) the defendant's statements were false or misleading; (ii) the statements deceived, or had the capacity to deceive, consumers; (iii) the deception had a material effect on the consumers' purchasing decision; (iv) the misrepresented service affected interstate commerce; and (v) it has been, or likely will be, injured as a result of the false or misleading statement. *Sovereign Military Hospitaller Order v. Fla. Priory of Knights Hospitallers*, 702 F.3d 1279, 1294 (11th Cir. 2012).

As to Count 2, Plaintiff alleges that:

> 62. Defendants . . . have used in connection with their advertisement, offer for sale, and sale of their Counterfeit Goods, false designations of origin and false descriptions and representations, including words or other symbols and trade dress, which tend to falsely describe or represent such goods and have caused such goods to enter into commerce with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to Plaintiff's detriment.
>
> 63. Defendants have authorized infringing uses of one or more of the Masha and The Bear Marks in Defendants' advertisement and promotion of their counterfeit and infringing branded goods. Defendants have misrepresented to members of the consuming public that the Counterfeit Goods being advertised and sold by them are

6

genuine, non-infringing goods.

64. Additionally, Defendants are using counterfeits and infringements of the Masha and The Bear Marks in order to unfairly compete with Plaintiff and others for space within search engine organic results, thereby jointly depriving Plaintiff of a valuable marketing and educational tool which would otherwise be available to Plaintiff and reducing the visibility of Plaintiff's genuine goods on the World Wide Web.

* * *

66. Plaintiff has no adequate remedy at law and has sustained indivisible injury and damage caused by Defendants' concurrent conduct. Absent an entry of an injunction by this Court, Defendants will continue to wrongfully reap profits and Plaintiff will continue to suffer irreparable injury to its goodwill and business reputation, as well as monetary damages.

(ECF No. 1 ¶¶ 62-64, 66).

Based on these allegations, which are admitted upon Defendants' default, Plaintiff has satisfied the elements to establish a claim for false designation of origin under the Lanham Act as alleged in Count 2.

3. *Florida Common Law Unfair Competition (Count 3)*

Under Florida common law, the determining factor in the analysis of unfair competition is whether a defendant's use of a plaintiff's trademarks created a likelihood of confusion between the plaintiff's and the defendant's products. *See Rolex Watch U.S.A., Inc. v. Forrester*, No. 83-CV-8381, 1986 WL 15668, at *4 (S.D. Fla. Dec. 9, 1986) ("[I]t is clear that the Court need not find 'actual confusion' . . . . The proper test is 'likelihood of confusion'").

As to Count 3, Plaintiff alleges that:

68. This is an action against Defendants based on their promotion, advertisement, distribution, sale, and/or offering for sale of goods using marks which are virtually identical, both visually and phonetically, to one or more of the Masha and The Bear Marks in violation of Florida's common law of unfair competition.

69. Specifically, Defendants are promoting and otherwise advertising, selling, offering for sale and distributing goods bearing counterfeits and infringements of the Masha and The Bear Marks. Defendants are also using counterfeits and

> infringements of the Masha and The Bear Marks to unfairly compete with Plaintiff for (i) space in search engine results across an array of search terms and/or (ii) visibility on the World Wide Web.
>
> 70. Defendants' infringing activities are likely to cause and actually are causing confusion, mistake and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' products by their use of the Masha and The Bear Marks.
>
> 71. Plaintiff has no adequate remedy at law and is suffering irreparable injury and damages as a result of Defendants' actions.

(ECF No. 1 ¶¶ 68-71).

Based on these allegations, which are admitted upon Defendants' default, Plaintiff has satisfied the elements to establish a claim for unfair competition under Florida common law as alleged in Count 3.

### 4. *Florida Common Law Trademark Infringement (Count 4)*

The analysis of liability for Florida common law trademark infringement under Count 4 is the same as the analysis of liability for trademark infringement under § 32(a) of the Lanham Act in Count 1. *See PetMed Express*, 336 F. Supp. 2d at 1217-18. Accordingly, Plaintiff has satisfied the elements to establish a claim for Florida common law trademark infringement. *See supra* section III.A.1.

### 5. *Copyright Infringement (Count 5)*

To establish a claim of copyright infringement under 17 U.S.C. § 501, a plaintiff must show: (i) "ownership of a valid copyright; and (ii) copying of constituent elements of the work that are original." *Innovative Sports Mgmt., Inc. v. Maldonado*, No. 19-CV-61935, 2020 WL 9460225, at *4 (S.D. Fla. June 26, 2020) (citations omitted).

As to Count 5, Plaintiff alleges that:

> 78. Plaintiff has registered and owns the copyrights in and to the registered works identified on Composite Exhibit 2 [t]hereto. Plaintiff owns the unregistered

> copyrights in and to the works identified in Exhibit 3 [t]hereto, which were originally produced in Russia, a Berne convention signatory.
>
> 79. Defendants have copied, performed, and distributed these Copyrighted Works through their advertising, distributing, offering for sale, and selling of Counterfeit Goods as part of a large scale and ongoing daily illegal enterprise. This illegal enterprise, without injunctive relief, will continue through the Defendants' Seller ID's as well as through other seller identifications owned now or in the future by the Defendants.
>
> * * *
>
> 85. Defendants' unlawful actions have caused and are continuing to cause unquantifiable and irreparable harm and unquantifiable damages to Plaintiff and are unjustly enriching Defendants at Plaintiff's expense.

(ECF No. 1 ¶¶ 78-79, 85)

Based on these allegations, which are admitted upon Defendants' default, Plaintiff has satisfied the elements to establish a claim of copyright infringement under 17 U.S.C. § 501 as alleged in Count 5.

### B.    Plaintiff is Entitled to Injunctive Relief and Statutory Damages

Plaintiff requests injunctive relief and statutory damages against Defendants for trademark counterfeiting and infringement as to Count 1. (ECF No. 54 at 10-17). As to Counts 2, 3, and 4, Plaintiff limits its request for damages to the equitable and monetary damages awarded pursuant to Count 1. *Id.* at 18. For copyright infringement under Count 5, Plaintiff requests solely injunctive relief. *Id.*

#### 1.    *Injunctive Relief as to Counts 1 and 5*[44]

Pursuant to the Lanham Act, a district court is authorized to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable" to prevent violations of trademark law. 15 U.S.C. § 1116(a). Indeed, "[i]njunctive relief is the remedy of

---

[44] As to Count 5, Plaintiff is seeking only a permanent injunction. (ECF No. 54 at 18 n.4). Accordingly, the request for injunctive relief applies to both Counts 1 and 5.

choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Burger King Corp. v. Agad*, 911 F. Supp. 1499, 1509-10 (S.D. Fla. 1995) (alteration in original) (citation omitted). Injunctive relief is available even in the default judgment setting, *see, e.g., PetMed Express,* 336 F. Supp. 2d at 1222-23, because a defendant's failure to respond or otherwise appear makes it difficult for a plaintiff to prevent further infringement absent an injunction. *See, e.g., Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003) ("[D]efendant's lack of participation in this litigation has given the court no assurance that defendant's infringing activity will cease. Therefore, plaintiff is entitled to permanent injunctive relief.").

Permanent injunctive relief is appropriate where a plaintiff demonstrates: (i) it has suffered irreparable injury; (ii) there is no adequate remedy at law; (iii) the balance of hardship favors an equitable remedy; and (iv) an issuance of an injunction is in the public's interest. *See eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391-92 (2006). Here, Plaintiff has carried its burden on each of the four factors. Specifically, in trademark cases, "a sufficiently strong showing of likelihood of confusion [caused by trademark infringement] may by itself constitute a showing of . . . a substantial threat of irreparable harm." *E. Remy Martin & Co., S.A. v. Shaw-Ross Int'l Imports, Inc.*, 756 F.2d 1525, 1530 (11th Cir. 1985); *see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 986 (11th Cir. 1995) ("There is no doubt that the continued sale of thousands of pairs of counterfeit jeans would damage [plaintiff's] business reputation and decrease its legitimate sales."). Plaintiff's Complaint and the supporting declarations reflect that the goods produced and sold by Defendants are nearly identical to Plaintiff's genuine products, and consumers viewing Defendants' counterfeit goods post-sale would confuse them for Plaintiff's genuine products. *See, e.g.*, (ECF No. 1 ¶ 61) ("Defendants' Counterfeit Goods

bearing, offered for sale, and sold under copies of one or more of the Masha and The Bear Marks are virtually identical in appearance to Plaintiff's genuine goods."); *Id.* ("Defendants' activities are likely to cause confusion in the trade and among the general public as to at least the origin or sponsorship of their Counterfeit Goods."); Golovlova Decl. ¶ 18 (Defendants' products were non-genuine, unauthorized Masha and The Bear products). Plaintiff has no adequate remedy at law as long as Defendants continue to operate the Seller IDs because Plaintiff cannot control the quality of what appears to be its products in the marketplace. *See, e.g., Id.* ¶ 21 ("Defendants are obliterating the otherwise open and available marketplace space in which Animaccord has the right to fairly market its goods[.]"). An award of monetary damages alone will not cure the injury to Plaintiff's reputation and goodwill if Defendants' infringing and counterfeiting continue. *Id.* ¶ 22 ("Animaccord is highly likely to experience irreparable damage to its reputation among consumers unless the infringing and counterfeiting activity alleged in the Complaint is stopped."). Moreover, Plaintiff faces hardship from loss of sales and its inability to control its reputation in the marketplace. Conversely, Defendants face no hardship if they are prohibited from the infringement of Plaintiff's trademarks, to which they have no right. Finally, the public interest supports the issuance of a permanent injunction against Defendants to prevent consumers from being misled by Defendants' products, and potentially harmed by their inferior quality. *See Chanel, Inc. v. besumart.com,* 240 F. Supp. 3d 1283, 1291 (S.D. Fla. 2016) ("[A]n injunction to enjoin infringing behavior serves the public interest in protecting consumers from such behavior."); *see also World Wrestling Entm't, Inc. v. Thomas*, No. 12-CV-21018, 2012 WL 12874190, at *8 (S.D. Fla. Apr. 11, 2012) (considering the potential for harm based on exposure to potentially hazardous counterfeit merchandise in analyzing public's interest in an injunction).

Moreover, broad equity powers allow the Court to fashion injunctive relief necessary to stop Defendants' infringing activities. *See, e.g., Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for . . . [t]he essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould [sic] each decree to the necessities of the particular case.") (alterations added; citation and quotation marks omitted)); *United States v. Bausch & Lomb Optical Co.*, 321 U.S. 707, 724 (1944) ("Equity has power to eradicate the evils of a condemned scheme by prohibition of the use of admittedly valid parts of an invalid whole.") (citations omitted)). Accordingly, District Courts may order the transfer or surrender of domain names in an *in rem* action against a domain name. *See* 15 U.S.C. §§ 1125(d)(1)(C), (d)(2). However, courts have not limited the remedy to that context. *See, e.g., Philip Morris USA, Inc. v. Otamedia Ltd.*, 331 F. Supp. 2d 228, 230 n.2 (S.D.N.Y. 2004) (transferring Yesmoke.com domain name to plaintiff despite the fact that plaintiff did not own a trademark in the term "Yesmoke" and noting 15 U.S.C. § 1125 "neither states nor implies that an *in rem* action against the domain name constitutes the exclusive remedy for a plaintiff aggrieved by trademark violations in cyberspace"); *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 853 (E.D. Mich. 2006) (ordering defendants to disclose all other domain registrations they held and to transfer registration of a particular domain name to plaintiff partly under authority of 15 U.S.C. § 1116(a)). Indeed, this Court and other courts in this District have ordered the transfer of domain names under similar scenarios.[5]

---

[5] *See e.g., Chanel, Inc. v. The Individuals, Business Entities, & Unincorporated Ass'ns,* No. 22-CV-60194-JEM (S.D. Fla. March 16, 2023) (ECF No. 55) (order requiring, inter alia, transfer of domains to plaintiff); *see also Vineyard Vines, LLC v. Individuals, Business Entities, & Unincorporated Ass'ns Identified on Schedule "A,"* No. 21-CV-61991-KMW (S.D. Fla. Dec. 21, 2021) (ordering, inter alia: (i) transfer of domain names at issue as part of grant of permanent injunction; (ii) assignment of all rights, title, and interest to defendants' domain names used to

Defendants have created an internet-based counterfeiting scheme through which they are profiting from their deliberate misappropriation of Plaintiff's rights. Accordingly, the Court may fashion injunctive relief to eliminate how Defendants are conducting their unlawful activities. Ordering the cancellation or transfer of the Seller IDs to Plaintiff, assigning all rights, title, and interest to the Seller IDs to Plaintiff, permanently delisting or deindexing the Seller IDs and corresponding website URLs from any internet search engine, and permanently closing the domain registration accounts in which the Seller IDs are located, such that these means may no longer be used as instrumentalities to further the sale of counterfeit goods, are appropriate remedies to achieve this end. Accordingly, Plaintiff should be awarded injunctive relief as sought in Counts 1 and 5.

2. *Statutory Damages for Counts 1, 2, 3, and 4*

In Count 1, Plaintiff also seeks statutory damages under 15 U.S.C. § 1117(c) (providing statutory damages for use of counterfeit marks). Pursuant to § 1117(c), a plaintiff may elect an award of statutory damages at any time before final judgment in the sum of not less than $1,000 nor more than $200,000 per counterfeit mark per type of good. 15 U.S.C. § 1117(c)(1). Additionally, if the Court finds that Defendants' counterfeiting actions were willful, it may impose damages above the maximum limit up to $2,000,000 per mark per type of good. 15 U.S.C. § 1117(c)(2).

---

promote, offer for sale, and/or sell goods bearing counterfeits and/or infringements of plaintiff's trademarks to plaintiff; and (iii) permanent de-indexing or delisting of defendants' domain names from internet search engines); *Richemont Int'l SA v. Keller,* No. 19-CV-62897-KMW (S.D. Fla. May 15, 2020) (same); *Chanel, Inc. v. aozhu9284*, No. 19-CV-63068-KMW (S.D. Fla. Feb. 25, 2020) (same); *Malletier v. Aaalvsale.com*, No. 21-CV-60790-BB, 2021 U.S. Dist. LEXIS 81124 (S.D. Fla. Apr. 28, 2021) (same); *Louis Vuitton Malletier v. aaalvshop.com*, No. 19-CV-61986-RAR, 2019 U.S. Dist. LEXIS 223653 (S.D. Fla. Nov. 21, 2019) (same).

The Court has wide discretion to set an amount of statutory damages. *PetMed Express*, 336 F. Supp. 2d at 1219 (citing *Cable/Home Commc'n Corp. v. Network Prod., Inc.*, 902 F.2d 829, 852 (11th Cir. 1990)). Indeed, an award of statutory damages is an appropriate remedy, despite a plaintiff's inability to provide actual damages caused by a defendant's infringement. *Ford*, 441 F. Supp. 2d at 852 ("[A] successful plaintiff in a trademark infringement case is entitled to recover enhanced statutory damages even where its actual damages are nominal or non-existent."); *see also PetMed Express*, 336 F. Supp. 2d at 1220 (statutory damages are "especially appropriate in default judgment cases due to infringer nondisclosure").

Moreover, a defendant's intent can be evidence of willfulness, triggering an enhanced statutory award. *Id*. A defendant is deemed to have acted willfully where "the infringer acted with actual knowledge or reckless disregard" to a plaintiff's intellectual property rights. *See Arista Records, Inc. v. Beker Enters., Inc.*, 298 F. Supp. 2d 1310, 1312 (S.D. Fla. 2003). Willfulness may also be inferred from the defendant's default. *See PetMed Express*, 336 F. Supp. 2d at 1217 (upon default, well plead allegations taken as true); *Arista Records,* 298 F. Supp. 2d at 1313 (finding a court may infer willfulness from the defendants' default). Here, the evidence establishes that Defendants intentionally copied the Masha and The Bear Marks for the purpose of deriving the benefit of Plaintiffs world-famous reputation. (ECF No. 1 ¶ 45) ("Defendants are engaging in . . . illegal counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Plaintiff's rights for the purpose of trading on Plaintiff's goodwill and reputation."). Defendants have also defaulted on Plaintiff's allegations of willfulness. (ECF No. 54 at 16); *see also* (ECF No. 1 ¶¶ 45, 83).

Plaintiff requests a statutory damage award of $20,000 against each Defendant. (ECF No. 54 at 17). This Court and other courts in this District have granted similar statutory

damages under the Lanham Act.[6] Accordingly, the undersigned recommends that the District Court award statutory damages under the Lanham Act to ensure Defendants do not continue their intentional and willful counterfeiting activities. Further, damages for Counts 2, 3, and 4 should be limited to the same equitable and statutory damages awarded under Count 1. *Id.* at 18. Lastly, Plaintiff does not seek statutory or actual damages under Count 5. *See* (ECF No. 54 at 18 n.4).

### IV.    RECOMMENDATION

For the reasons set forth above, the undersigned respectfully recommends that Plaintiff's Motion for Entry of Final Default against Defendants (ECF No. 54) be **GRANTED**. The Court should enter a Default Final Judgment and Permanent Injunction as proposed at ECF No. 54-4.

Within **14 days** after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this District. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b). Failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1 (2023); *see Thomas v. Arn*, 474 U.S. 140 (1985).

**DONE AND ORDERED** in Chambers in Fort Lauderdale, Florida July 22, 2024.

_____
ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

cc:   U.S. District Judge Jose E. Martinez
      All Counsel of Record

---

[6] *See e.g., See e.g., Chanel,* No. 22-CV-60194-JEM (ECF Nos. 51, 55) (accepting Magistrate Judge's recommendation to award $100,000 in statutory damages per defendant); *Chanel, Inc. v. Designerreplicachanel.com,* No. 17-CV-62048-KMW, 2018 U.S. Dist. LEXIS 227392 (S.D. Fla. Aug. 22, 2018) (awarding plaintiff $1,000,000 against each defendant); *Vineyard Vines,* 21-CV-61991-KMW (ECF No. 41 at 4) (same); *Richemont Int'l,* No. 19-CV-62897-KMW (S.D. Fla. May 15, 2020) (ECF No. 48 at 4) (same); *Chanel,* 2018 U.S. Dist. LEXIS 227392, at *4 (same).